**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **No. 3:23cr00217** |
| | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **DAMEN DRAKEFORD,** | : | |
| **Defendant.** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM ORDER

Before the court is Defendant Damen Drakeford's *pro se* motion for reduction in sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (Doc. 46). Defendant seeks release to care for his ailing father. The motion is opposed by the United States of America, and the matter is ripe for disposition.

### Background

### I. Criminal History

Defendant is incarcerated at FCI-Ray Brook in Ray Brook, New York, following a sentence imposed by the undersigned. Defendant's incarceration resulted from his conviction of four robberies while on probation. (Doc. 48 at 1). Defendant committed the first robbery on July 7, 2023. Id. at 5. Drakeford entered Fulton Bank in Netcong, New Jersey, and handed the teller a Nike shoe box with the order "Give me all the 100's, 50's, 20's, and 10's" written on the box. Id. He also verbally demanded "all the 50's and 100's" from the first teller and

later demanded more money from a second teller who complied. Id. at 5–6. The loss to the bank totaled $13,200. Id. at 6.

On July 11, 2023, defendant robbed two more banks. Id. The first robbery was at Provident Bank in Fair Lawn, New Jersey. Id. The loss to the bank totaled $2,502. Id. The second robbery later that day was at Fidelity Bank in Upper Mount Bethel Township, Pennsylvania. Id. The loss to the bank totaled $14,705. Id. at 7.

The last robbery was on July 14, 2023. Id. at 2. Drakeford entered M&T Bank in Stroud Township, Pennsylvania, and demanded — verbally and written on a crumpled-up note — all the money from three tellers to be put into a black bag. Id. at 2, 4. The tellers complied, but also placed two hidden GPS trackers into the bag. Id. at 4. The loss to the bank totaled $2,581. Id.

The Monroe County Control Center monitored the GPS trackers and provided police with information as to the general location of the robber. Id. at 2. A Stroud Area Regional Police officer responded to the location where he observed a vehicle, a 2020 Nissan SUV with a New Jersey registration, accelerating away from his patrol vehicle at a high rate of speed. Id. It then turned into a high-speed chase on Interstate 80 reaching speeds greater than 80 miles per hour. Id. at 3. The vehicle pursuit changed to a foot pursuit into the

woods after the defendant struck an embankment. Id. He was eventually apprehended by Pennsylvania State Police. Id.

Troopers "live scanned" the defendant with a fingerprint scanner at the hospital and identified him as Damen Drakeford. Id. After being released from the hospital, and cleared for incarceration, defendant was interviewed by a detective. Id. at 4. Drakeford waived his Miranda rights, admitted to robbing the M&T Bank and fleeing in the car, and revealed the money and note were still in the car. Id. Police obtained a search warrant for the vehicle. Id. The search of the vehicle resulted in the seizure of a black bag containing $2,073, two $1,000 money bands with built-in GPS trackers, a white M&T bank envelope containing $108, and a handwritten note stating, "Give me all the money in every drawls [sic]." Id. at 5. Defendant also admitted to three other bank robberies during the interview. Id.

In total, Drakeford robbed four banks on three separate dates and obtained $32,988. Id. at 7. On November 21, 2023, the defendant appeared before this court and pleaded guilty to a superseding information charging four counts of bank robbery in violation of 18 U.S.C. § 2113(a). Id. On March 7th, 2024, defendant was sentenced to 84 months' imprisonment, followed by 3 years of supervised release, and ordered to pay restitution in the amount of $32,988. (Doc. 44).

Defendant had a criminal history prior to his conviction for the bank robberies. (Doc. 48 at 11). At age 15, defendant kicked in a victim's door and threatened him with a knife during an attempted burglary. Id. (citation omitted). Then at age 16, he was adjudicated delinquent in two separate offenses for possession of a weapon on school property and robbery. Id. (citation omitted). At age 18, defendant was convicted of robbery where he threatened victims with immediate bodily injury. Id. (citation omitted). Defendant also had later convictions for theft by deception, forgery, uttering forged instruments, and bad checks. Id. (citation omitted). Drakeford was on probation when he committed the four robberies. Id.

## II. Motion for Compassionate Release

Defendant submitted a request for compassionate release to the warden of his institution on October 16, 2025, alleging extraordinary and compelling reasons. (Doc. 47 at 2; Doc. 47-1 at 33). The warden denied the request on November 24, 2025, based on findings that the defendant's circumstances did not meet the "extraordinary and compelling" requirement. (Doc. 47-1 at 33). On March 4th, 2026, the defendant's motion for compassionate release and memorandum in support were filed, which is now before this court. (Doc. 46).

Defendant's father, Grover Drakeford ("Mr. Drakeford"), was diagnosed with Alzheimer's dementia with agitation at the end of 2020. (Doc. 47 at 2). At

the time of Mr. Drakeford's diagnosis, he allegedly was living in a shelter on Staten Island. Id. Defendant claims that Mr. Drakeford faced many consequences due to his worsening condition including: 1) being attacked by other members of the shelter due to his agitation, 2) stealing without reason, 3) forgetting to feed himself, and 4) inability to locate a restroom when he needs to relieve himself. Id. These circumstances led to Mr. Drakeford moving to live with defendant in Wilkes-Barre, Pennsylvania. Id. Defendant maintains Mr. Drakeford received proper care when living with him. Id.

After defendant's incarceration, defendant's mother Rebecca Morgan ("Ms. Morgan"), started taking care of Mr. Drakeford. Id. at 3. Ms. Morgan and Mr. Drakeford have been divorced for over twenty years. Id. Defendant claims his mother reluctantly took Mr. Drakeford in because he became incarcerated and there was no one else available. Id. Defendant alleges Mr. Drakeford's condition has continually worsened, requiring 24/7 care. Id. In order to keep up with his care, Ms. Morgan purportedly quit her second job. Id. Defendant claims the responsibility of being Mr. Drakeford's caretaker is challenging for Ms. Morgan. Id. Some examples of Mr. Drakeford's challenging conduct are that he: 1) physically hits/fights Ms. Morgan, 2) randomly defecates/urinates in the house, 3) almost burned down the house, and 4) walks out of the house and gets lost, sometimes for days, requiring the police to be called. Id.

After struggling financially, Ms. Morgan went back to her second job. Id. She feels that she can no longer provide the level of care Mr. Drakeford needs. Id. An example provided is that she is scared to bathe Mr. Drakeford or clean him after using the restroom due to his violent response. Id. Defendant claims that it has been incredibly straining on Ms. Morgan to the point she "wanted to just drop Mr. Drakeford off somewhere and leave to abandon him." Id. Defendant and his mother cannot afford to put Mr. Drakeford in a nursing home facility to provide the care they allege he needs. Id. Defendant maintains he provided the necessary care for his father before incarceration and believes he can provide that care again. Id.

Defendant has five siblings. Id. His four brothers live out of state, one in South Carolina and three in Oregon. Id. Defendant claims that they are not available caregivers for their father "due to their living in other states and being unable to move back in order to care for him." Id. His sister, the youngest sibling, is homeless and lives in another state. Id.

Defendant has, to his credit, accomplished much while incarcerated. The list includes certifications, completion of courses, and being invited to an honor society, all of which will help the defendant obtain work once released. Id. at 4. As part of his release plan, defendant proposes he could "join the local union as a carpenter" or work as a technician "for AT&T and Verizon." (Doc. 46-1 at 2).

The motion for compassionate release claims the defendant's expected release date is June 29, 2029. (Doc. 46 at 2). According to the Bureau of Prisons, defendant's expected release date has been moved to September 22, 2028.[1]

**Standard of Review**

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). A court may, however, "reduce the term of imprisonment (and may impose a term of probation or supervised release) . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) . . . if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The Sentencing Commission adopted a policy statement regarding the reduction in a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), effective November 1, 2023. This policy statement provides:

> Upon the motion of the . . . defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved motion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> Extraordinary and compelling reasons warrant the reduction;

[1] Updated sentence found at https://www.bop.gov/inmateloc/, last accessed on September 24, 2026. Defendant's register number is: #73944-510.

> . . .
>
> The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> The reduction is consistent with this policy statement.

U.S.S.G. §1B1.13 (citation modified).

**Analysis**

**I. Exhaustion of Remedies**

A court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

Here, defendant has exhausted all possible remedies. Defendant submitted a request for compassionate release, alleging extraordinary and compelling reasons, to the warden of his institution on October 16, 2025. (Doc. 47 at 2). The warden denied the request on November 24, 2025, based on findings that the defendant's circumstances did not meet the "extraordinary and compelling" requirement. (Doc. 47-1 at 33). On March 4th, 2026, the defendant filed a motion for compassionate release and a memorandum in support. (Docs. 46–47).

## II. Extraordinary and Compelling

Defendant argues that his desire to care for his father provides the "extraordinary and compelling reasons" that warrant a reduction of his sentence. The court disagrees.

"[A] defendant seeking a reduction in his term of imprisonment bears the burden of establishing . . . that compelling and extraordinary reasons exist to justify compassionate release." United States v. Epstein, 14-CR-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); see also United States v. Singh, 525 F. Supp. 3d 543, 546 (M.D. Pa. 2021) ("The burden rests with the defendant to show that a reduction in sentence is proper.") (citation omitted). Under the law, "'extraordinary and compelling' reasons for compassionate release are those that are especially unusual and convincing." Rutherford v. United States, 608 U.S. 454, ___, 146 S. Ct. 1320, 1330 (2026). "'Extraordinary" means 'most unusual,' 'far from common,' and 'having little or no precedent.'" Fernandez v. United States, 608 U.S. 411, ___, 146 S. Ct. 1292, 1302 (2026); Rutherford, 146 S. Ct. at 1330 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 807 (1976)). "'Compelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" Fernandez, 146 S. Ct. at 1302; Rutherford, 146 S. Ct. at 1330 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 463).

The "heartland of compassionate release" is defined by a prisoner's personal circumstances. Rutherford, 146 S. Ct. at 1331. To that end, the United States Sentencing Commission is permitted by law to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Guidelines include personal circumstance considerations. The sections applicable here are as follows:

> **(b) Extraordinary and Compelling Reasons**.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> . . .
>
> **(3) Family Circumstances of the Defendant.**—
>
> . . .
>
> **(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

U.S.S.G. § 1B1.13(b)(3)(C).

**A. Incapacitation**

The policy statement uses the word "incapacitation," which is not further defined. In so-defining, some courts have been guided by the Bureau of Prisons ("BOP") program statements. See United States v. Walker, 19-CR-928, 2024 WL 580152, at *3 (D.N.J. Feb. 13, 2024); United States v. D'Ambrosio, 1:15-CR-3,

2020 WL 4260761, at *3 (M.D. Pa. July 24, 2020), aff'd, 858 F. App'x. 475 (3d Cir. 2021).

BOP Program Statement §5050.50 defines "incapacitation" relative to an inmate's spouse or registered partner as having:

> [s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [person] is completely disabled, meaning that the [person] cannot carry on any self-care and is totally confined to a bed or chair; or has [a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [person's] mental capacity or function), but may not be confined to a bed or chair.

United States v. Martin, Crim. No. 16-403-2, 2025 WL 3033898, at *3 n.2 (E.D. Pa. Oct. 30, 2025) (citation modified).

The court finds the above definition persuasive and applicable to circumstances where a defendant seeks to provide care to an elderly parent. United States v. Tobolsky, 21-CR-00303, 2024 WL 323476, at *3 (D.N.J. Jan. 29, 2024) (applying BOP Program Statement 5050.50 definition to a similar request).

Defendant established that his father, Mr. Drakeford, is diagnosed with Alzheimer's dementia with agitation. (Doc. 47 at 2). Defendant attached various documents to his motion reflecting Mr. Drakeford's condition. (Doc. 47-1 at 2–7). Defendant alleges that Mr. Drakeford's condition has worsened to the point he now needs 24/7 care. (Doc. 47 at 3). Alzheimer's dementia is used as an

example within the definition of incapacitation. Thus, the court presumes defendant has shown the incapacitation of his father.

### B. Only Available Caregiver

It must also be established that the defendant is the only available caregiver. U.S.S.G. §1B1.13(b)(3)(C). Defendant cannot meet his burden with the information provided. See United States v. Yarbrough, 2:06-cr-00203-1, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023) (denying compassionate release where the defendant did not "obviate[] the facial availability of other family members as potential viable caregivers."); see also Tobolsky, 2024 WL 323476, at *3 (collecting cases emphasizing the requirement that the defendant be the only available caregiver).

The motion contains the assertion that four of the defendant's siblings, one residing in South Carolina and three in Oregon, are not available caregivers for Mr. Drakeford "due to their living in other states and being unable to move back in order to care for him." (Doc. 47 at 3). Other than residing out of state, defendant provides no other explanation in his motion as to why he would he would be the "only available caregiver" for his father versus these four other siblings. Id. However, defendant did provide more details as to why his youngest sibling, who is homeless, cannot be an available caregiver. Id. In a letter attached by Ms. Morgan, she asserts that "Damen is the only child willing to

step up and care for [Mr. Drakeford]. (Doc. 47-1 at 8). She also explains that the youngest sibling is afraid of her father due to his aggression towards her and her daughter. Id.

But the motion and accompanying filings clearly demonstrate Ms. Morgan, defendant's mother, continues to be Mr. Drakeford's caregiver while the defendant is incarcerated. (Doc. 47 at 1; see also Doc. 53 at 2). The court is sympathetic to the hardships associated with such circumstances, but they do not meet the burden of extraordinary and compelling. Although Ms. Morgan says she is struggling with the responsibility of taking care of Mr. Drakeford, "[i]t is not uncommon . . . for a criminal sentence to impose burdens, sometimes severe ones, on family members." Tobolsky, 2024 WL 323476, at *3 (quoting United States v. Dunich-Kolb, No. CR 14-150, 2022 WL 580919, at *8 (D.N.J. Feb. 14, 2022)). Extraordinary and compelling circumstances require defendant to be the "only" available caregiver—not the most convenient one.

**Conclusion**

For the reasons set forth above, defendant's motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), (Doc. 46), is **DENIED**.

As to defendant's requests to modify his restitution amount, (Docs. 51 & 53), those requests are **DENIED**. The court may modify restitution upon a "material change in defendant's economic circumstances." 18 U.S.C. § 3364(k).

Defendant's incarceration and reduction in capacity to earn were implicitly considered by this court when crafting his restitution order, as the deposits to his inmate trust fund account are necessary to the calculation. (Doc. 44 at 7). To the extent Drakeford is conflating this court's restitution order with payments he is required to make through the IFRP, "the proper vehicle [to challenge the latter] is a petition under 28 U.S.C. § 2241 filed in the district court where his sentence is being carried out, United States v. Banks, 422 F. App'x 137, 140 (3d Cir. 2011) (citing McGee v. Martinez, 627 F.3d 933, 937 (3d Cir. 2010)), presently the Northern District of New York.

As defendant has not apprised the court of any need for his sentencing transcript, his request for a free or reduced price to obtain one is **DENIED**. See United States v. Jackson, 302 F. App'x 122, 123 (3d Cir. 2008) ("[W]e are aware of no authority under which the United States may be required to pay the cost of transcripts when no proceeding is pending."); see also id. ("A federal prisoner is not entitled to obtain copies of court records at Government expense for the purpose of searching the record for possible error.") (citation omitted).

**Date:** 9/25/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**